**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDREA L. BRIGGS,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:16-902** |
| **v.** | : | **(JUDGE MANNION)** |
| **MACY'S INC.,** *et al.,* | : | |
| **Defendants** | : | |

## ORDER

Presently before the court is the Report and Recommendation ("Report") of Magistrate Judge Martin C. Carlson. (Doc. 88). In it, Judge Carlson, recommends the court deny the defendants Macy's Inc, Macy's Retail Holdings, Inc., and Jay Reese's motion for summary judgment, (Doc. 53), as well as the plaintiff Andrea L. Briggs's motion for summary judgment as to the defendants' counterclaims, (Doc. 75). The defendants have filed objections to the Report. (Doc. 90).

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir.2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge

and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. *Rieder v. Apfel*, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing *U.S. v. Raddatz*, 447 U.S. 667, 676 (1980)).

Even where no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed.R.Civ.P.72(b) advisory committee notes; *see also Univac Dental Co. v. Dentsply Intern., Inc.*, 702 F.Supp.2d 465, 469 (M.D.Pa.2010) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir.1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); M.D.Pa. Local Rule 72.31.

In his Report, Judge Carlson observes that virtually every material fact regarding Briggs's claims and the defendants' counterclaims are in dispute. With respect to Briggs's claims, the Report notes that, although the defendants interpret them differently, when viewed in context and in the light most favorable to Briggs, Briggs's allegations are sufficient to demonstrate that she suffered discrimination because of her gender and was subject to a hostile work environment. Namely, she has provided evidence that her male

supervisor, Jay Reese, repeatedly displayed inappropriate behavior toward her, including inappropriate comments and advances, staring, touching, and requests and that such behavior was frequent and because of her gender. Additionally, the Report concludes that Briggs proffered sufficient evidence for her retaliation claim because she engaged in a protected activity of reporting the inappropriate behavior by Reese, was terminated, and there was a causal connection between the two, given that the initial decision to reprimand her was changed to termination after Reese became involved in the decision. Additionally, although the defendants have shown a legitimate, non-discriminatory reason for the termination, the Report observes that Briggs has produced evidence that it was pretextual given the disciplinary action against her was more severe than for employees who engaged in the same activity.

Similarly, with respect to the defendants' counterclaims against Briggs, Judge Carlson recommends the court allow them to proceed. The Report notes that the claims are not barred by the statute of limitations since Fed.R.Civ.P.15(c)(1)(B) allows for relation back of claims arising out of the occurrence in the original pleading and, to the extent Rule 15 conflicts with Pennsylvania's Rules of Civil Procedure, the Federal Rules control. *See Lyons v. Emerick*, 187 Fed.App'x 219, 221 (3d Cir. 2006). Further, the Report

notes that the defendants offered evidence that Briggs and four others were terminated for their role in a scheme in which they issued and received Macy's Money for unauthorized reasons.

In their objections, the defendants initially argue that the material facts are not in dispute because much of the defendants' asserted facts relate to Macy's policies and practices, which required explanation, and although Briggs's 147-page response disputes many of the facts, her citations to the record do not demonstrate genuine disputes of fact or address the facts that the defendants assert. This is because, the defendants argue, Briggs relies "in large part on the testimony of witnesses with no foundation . . ., relies on inadmissible evidence, or simply argues her case without regard to whether she had evidence to dispute the fact at issue." (Doc. 90, at 4). While the court agrees that Briggs's responses to the defendants' statement of facts are, at times, extraneous, she nevertheless does cite to statements by individuals in their depositions that stand in opposition to the facts as asserted by the defendants. While the defendants may disagree with the sentiments expressed by those individuals, whether those statements are "speculative," or made "without knowledge of the facts on which they were opining" is indeed a question of credibility reserved solely for the jury. (Doc. 90, at 5).

The defendants also object to the Report's conclusion as to Briggs's gender-based discrimination claim, arguing that Briggs cannot establish a prima facie case since the two men who received better treatment were not similarly-situated: one, Steve Shaw, was an hourly asset protection detective not otherwise involved in the Macy's Money scheme and, as to the other, Jay Reese, there is no evidence he received the Macy's Money printed for him.

The court will overrule this objection since it once again hinges on disputed issues of fact. Briggs asserts that Reese, who was also senior management, improperly received (as well as distributed) Macy's Money contrary to store policy: "Macy's own internal documents regarding the distribution and receipt of Macy's Money in 2014 reveal that Mr. Gorski gave Macy's Money to Mr. Reese despite Macy's prohibition of Vice-President/Store Managers receiving Macy's Money." (Doc. 62, at 35). Additionally, as Briggs observes, if the mere fact that a Macy's report states an individual received Macy's Money does not necessarily mean that the individual did, in fact, receive the Macy's Money, as defendants contend, then the same logic applies to the reports of Briggs's receipt of Macy's Money.

The defendants also object to the Report's conclusion that Briggs's retaliation claim should survive since, they argue, Briggs cannot show her

termination was a pretext for gender discrimination. The defendants cite the fact that the termination was based on the investigation of Tim Huff, who did not have an office in the Wyoming Mall, did not know those involved, and was not friends with, or adverse to, anyone involved. Further, the defendants note that a woman, Linda Stiller, made the final termination decision. Although they acknowledge that Reese had some involvement in the investigation and may have gotten the "ball rolling," they assert that the determination to terminate Briggs "was made by Stiller alone," and that she did not rely on what Reese and Ludwig said. (Doc. 90, at 9, 1).

That is only true, however, if the factfinder were to find Stiller's statement in her declaration to be credible. For her part, Briggs points to evidence in direct opposition to the defendants' contention—namely, the interview notes of Nora Marcy. (Doc. 60, at 2, Ex. "C," at 208 and Exhibit 18, at ¶5(a)). ("What pushed this situation over that line to termination? The decision changed after a conversation with Jay and Melissa Ludwig, the DVP."). Significantly, Stiller herself also expressed similar sentiments in her interview: "What was your involvement in the investigation? Linda was the decision maker. . . . Initially Linda recommended that they be disciplined but not terminated. When the VPSM [Jay Reese] was told, he called Linda and expressed his concern with that decision. Linda described him as upset. . . .

- 6 -

Linda partnered with JoAnn Nelson in legal on the decision and JoAnn recommended termination . . . ." (Doc. 60, at 2, Ex. "C," Exhibit 13, at ¶2).

Finally, the defendants argue that Reese's actions in starting the Macy's Money investigation could not have been in retaliation for Briggs's reporting him for sexual harassment since there is no evidence Reese was made aware that Briggs made such reports. There is evidence to the contrary, however, since Ms. Cooney, to whom Briggs made such a report, approached Reese regarding complaints made by Briggs about Reese and, additionally, Cooney passed those concerns onto Nora Marcy in human resources. (Doc. 60, Ex. "F," at 33). Furthermore, Briggs herself indicated she personally told Reese that she avoided him in the store and that she told numerous people about the harassment she was experiencing from Reese.

Thus, there is indeed a genuine dispute of material fact as to whether Reese caused Briggs's termination and whether her termination was in retaliation for her complaints regarding Reese instead of for violating the Macy's Money policy. Put simply, there is evidence for both sides' positions which precludes a legal determination of whether the defendants violated the law. Accordingly, the court will overrule the defendants' objections.

The court has conducted a thorough review of all pertinent filings and finds the Report of Judge Carlson to be well-reasoned and well-supported.

As such, the court will adopt the report in its entirety as the decision of the court.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

**(1)** Judge Carlson's Report, (Doc. 88), is **ADOPTED IN ITS ENTIRETY**;

**(2)** The defendants' objections to the Report, (Doc. 89), are **OVERRULED**;

**(3)** The defendants' motion to for summary judgment, (Doc. 53), is **DENIED**;

**(4)** Briggs's motion for summary judgment, (Doc. 75), is **DENIED**;

**(5)** Brigg's motion for an extension of time to file a brief in opposition to the defendants' objections, (Doc. 92), is **DISMISSED as moot**; and

**(6)** By separate order, the court will set a date for trial.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 31, 2021**
16-0902-07

- 8 -